UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LEONARD BRIGGS, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION, et al,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　C.A. No. 1:15-cv-40162-GAO<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF MASSACHUSETTS DEPARTMENT OF CORRECTION DEFENDANTS' MOTION TO EXCLUDE EXPERT EVIDENCE**

**INTRODUCTION**

　　The plaintiffs have disclosed three experts: Gina G. Hilberry, AIA LEED-AP CCS, a practicing architect; Judy Anne Shepard-Kegl, Ph.D, a professor in the linguistics department at University of Maine who coordinates the American Sign Language (ASL)/English Interpreting Concentration of the linguistics major and serves as the director of the Signed Language Research Laboratory; and Richard Lorenzo Ray, the ADA Technology Access Coordinator for the City of Los Angeles Department on Disability.[1]

　　The Massachusetts Department of Correction ("DOC") defendants[2] move to exclude the following testimony from these experts: (1) testimony by Hilberry, Shepard-Kegl, and Ray that

---

[1] Hilberry's expert report is attached hereto as **Exhibit 1**. Shepard-Kegl's expert report is attached hereto as **Exhibit 2**. Ray's expert report is attached as **Exhibit 3**.

[2] The DOC Defendants are the DOC, Commissioner Carol A. Mici, Deputy Commissioner Jennifer A. Gaffney, Superintendent Suzanne Thibault, Superintendent Steven Silva, Superintendent Lisa Mitchell, and Acting Superintendent Kyle Pelletier. The DOC officials,

DOC's policies and procedures for notifying deaf and hard-of-hearing inmates of emergencies are inadequate; and (2) Ms. Hilberry's opinions concerning the meaning of certain regulations and standards and her opinions regarding DOC's estimates for installing visual alarms in DOC facilities. For the reasons set forth below, this testimony is inadmissible under Federal Rule of Evidence 702 and the United States Supreme Court's holding in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

## ARGUMENT

A.  **Standards for Excluding Expert Evidence Under Rule 702 and Daubert v. Merril Dow Pharmaceuticals, Inc.**

Rule 702 of the Federal Rules of Evidence provides the ground rules for admitting expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert, the Supreme Court held that expert testimony is admissible only if it is both relevant and reliable. Daubert, 509 U.S. at 597. Trial court judges are charged with the responsibility of acting as gatekeepers to exclude irrelevant and unreliable expert testimony. Id. at 589. The expert's testimony must rest on "knowledge" and not "subjective belief or unsupported speculation." Id at 590. In this context, "knowledge" means known facts, ideas inferred from known facts, or accepted truths on good grounds. Id.

---

named in their official capacities, have been substituted as successors in office, under Fed. R. Civ. P. 25(d).

The <u>Daubert</u> Court set out five factors to assist judges in determining the reliability of expert testimony: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; (4) the existence of standards controlling the technique's operation; and (5) the level of the theory's or technique's acceptance within the relevant discipline. <u>Id</u>. at 593-594. "These factors, however, are not definitive or exhaustive, and the trial judge enjoys broad latitude to use other factors to evaluate reliability." <u>United States v. Mooney</u>, 315 F.3d 54, 62 (1st Cir. 2002). The <u>Mooney</u> Court stated that <u>Daubert</u> demands "that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." <u>Mooney</u> 315 F.3d at 63 (citing <u>Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.</u>, 161 F.3d 77, 85 (1st Cir. 1998)). Thus, the gatekeeper will inquire into the expert's methodology as well as the expert's qualifications. See <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 153 (1997) (affirming district court decision accepting expert's qualifications but rejecting testimony for faulty methodology). "[N]othing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997).

  **B.** **Expert Testimony Concerning The Alleged Inadequacies In DOC's Policies And Procedures Should Be Excluded Because They Are Not The Product Of Specialized Knowledge Or Methodologies.**

Hilberry, Shepard-Kegl, and Ray each opine that DOC's current policies and procedures do not adequately notify deaf and hard-of-hearing inmates of emergencies. (Hilberry Report at 8-10, **Exhibit 1**; Shepard-Kegl Report at 36-42, **Exhibit 2**; Ray Report at 5-6, **Exhibit 3**). All

three of their opinions on this subject are based on allegations by the named plaintiffs concerning their experiences with emergency notifications and evacuations in DOC facilities. For the reasons set forth in the DOC Defendants' summary judgment motion and accompanying memorandum of law, the events alleged by the plaintiffs, even assumed to be true for purposes of summary judgment, do not bear out the claim that they have been denied "meaningful access," Iverson v. City of Boston, 452 F.3d 94, 99 (1st Cir.2006), to emergency notifications.

For purposes of this motion, however, the critical point is this: neither the experts' conclusion regarding the adequacy of the DOC's policies and practices, nor the reasoning employed in support of their conclusion, are based upon expert knowledge or methodology.[3] Indeed, despite the experts' diverse backgrounds, their analyses largely echo one another, strongly indicating that their conclusions regarding the adequacy of DOC's emergency notification practices are not based on specialized expert information, but are simply lay opinions.

Because Hilberry's Shepard-Kegl's and Ray's opinions regarding DOC's emergency notification practices are not the product of specialized knowledge or methods, these opinions should not be stamped with an expert imprimatur. They are of no more assistance to this Court than attorney argument on the very same subject would be. Accordingly, their opinions regarding the adequacy of DOC's notification policies and procedures should be excluded.

---

[3] Shepard-Kegl's opinion does contain specific comments relating to notifications and evacuations that reflect her expertise. For example, she observes that during an emergency the stress of the situation would likely impair the accuracy of lip-reading and she notes that even hard-of-hearing inmates who are capable of hearing some sounds "consistently cannot determine where the sound is coming from or what it is meant to signify." (Shepard-Kegl Opinion at 41, **Exhibit 2**). These observations, while useful, do not substantiate the conclusion that the DOC should not rely on correction officers to notify deaf and hard-of-hearing inmates of emergencies. For example, the uncertainties involved in lip-reading during emergencies will be addressed by the provision of flash cards with clear pictograms (containing, for example, a symbol for fire), as required by the parties' Settlement Agreement.

4

### C. Hilberry's Interpretations Of Building And Accessibility Regulations And Guidelines Should Be Excluded Because The Interpretation Of These Regulations And Guidelines Are The Province Of This Court Rather Than Expert Testimony.

Hilberry opines that under ADA Accessibility Guidelines, the Massachusetts State Building Code, and the Massachusetts Architectural Access Board regulations, visual emergency are required in the cells of medium and maximum security inmates housed in general population. (Hilberry Report at 10-12, **Exhibit 1**). This opinion, which appears to be nothing more that Hilberry's interpretation of regulations and standards, should be excluded.

Courts routinely exclude expert testimony concerning the meaning of building codes and other such regulations. See, e.g., Pelletier v. Main Street Textiles, LP, 470 F.3d 48, 54-55 (1st Cir. 2006) (affirming exclusion of expert testimony concerning applicability of OSHA regulations to defendant's conduct); Perry v. Medeiros, 343 N.E.2d 859, 863 (Mass. 1976) ("The [building] inspector was properly precluded from giving the jury his opinion interpreting the [building] code and the effect thereof on facts to be found by the jury."). This Court is entirely capable of reading the ADA Accessibility Guidelines, the Massachusetts State Building Code, and the Massachusetts Architectural Access Board regulations for itself. The Court need not rely upon the *ipse dixit* of Hilberry or any other expert witness.

### D. Hilberry's Opinions Regarding DOC's Cost Estimates Should Be Excluded Because They Are Not Based On A Specialized Methodology.

Hilberry opines that DOC's cost estimates are flawed and inflated. (Hilberry Report at 13-15, **Exhibit 1**). In part, her critiques rest on a disagreement with DOC about whether the installation of visual alarms would trigger additional upgrades under the ADA Accessibility Guidelines, the Massachusetts State Building Code, and the Massachusetts Architectural Access

Board regulations. (Id.). To the extent Hilberry's opinion rests on her interpretation of the relevant codes, it should be excluded for the reasons set forth above.

Moreover, it is not clear how any expert methodology has been brought to bear in her critiques of DOC's estimates. Indeed, many of her criticisms are cursory. For example, calling into question a cost estimate for MCI-Shirley Medium assuming the installation of sixteen (16) cells in the housing buildings, she conclusorily opines that "[i]t only seems logical that 2 notification devices would cost significantly less than 16." (Hilberry Report at 14, **Exhibit 1**). This may seem "only logical" to Hilberry, but she proffers no analysis. She does not consider, for instance, if a panel upgrade would be required whether two (2) alarms or sixteen (16) alarms were installed, and if so what the panel upgrade cost would be relative to the cost of the devices themselves. It is not clear how Hilberry's testimony on this topic would assist the Court in assessing the DOC's cost estimates than would attorney argument on the same topic. It should be excluded.

## CONCLUSION

WHEREFORE, the DOC Defendants ask this Court to exclude (1) testimony by Hilberry, Shepard-Kegl, and Ray that DOC's policies and procedures for notifying deaf and hard-of-hearing inmates of emergencies are inadequate; and (2) Ms. Hilberry's opinions concerning the meaning of certain regulations and standards and her opinions regarding DOC's estimates for installing visual alarms in DOC facilities.

                          Respectfully submitted,

                          NANCY ANKERS WHITE
                          Special Assistant Attorney General

Dated: December 20, 2019

                          /s/ Timothy M. Pomarole
                          Timothy M. Pomarole
                          BBO #: 660827
                          Legal Division
                          Department of Correction
                          70 Franklin Street, Suite #600
                          Boston, MA 02110
                          (617) 727-3300, ext. 1158
                          Timothy.Pomarole@doc.state.ma.us

**CERTIFICATE OF SERVICE**

I, Timothy M. Pomarole, hereby certify that a true and accurate copy of this document was served via ECF to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as nonregistered participants on December 20, 2019.

*/s/ Timothy M. Pomarole*
Timothy M. Pomarole