**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEONARD BRIGGS, GEORGE SKINDER,<br>LOUIS MARKHAM, FRANCIS MCGOWAN,<br>ERIC ROLDAN, ROLANDO S. JIMENEZ, AND<br>JENNIFER WARD, *on behalf of themselves and*<br>*all others similarly situated*,<br><br>        Plaintiffs,<br><br>    v.<br><br>MASSACHUSETTS DEPARTMENT OF<br>CORRECTION, *et al.*,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>) C.A. No. 1:15-cv-40162-GAO<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>MEMORANDUM IN OPPOSITION TO MASSACHUSETTS DEPARTMENT OF<br>CORRECTION DEFENDANTS' MOTION TO EXCLUDE EXPERT EVIDENCE</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ...................................................................................................... 1

   A.    Judy Anne Shepard-Kegl, Ph.D .......................................................................... 2

   B.    Richard Lorenzo Ray ........................................................................................... 3

   C.    Gina Hilberry, AIA LEED-AP CCS .................................................................... 5

II.   ARGUMENT ............................................................................................................. 6

   A.    Testimony of Expert Witnesses with Varying Expertise Is Admissible Under Fed. R. Evid. 702 ......................................................................................................................... 6

   B.    Plaintiffs' Experts Meet the Requirements of Rule 702 ....................................... 8

     1.    Dr. Shepard-Kegl .......................................................................................... 9

     2.    Mr. Ray ........................................................................................................ 10

     3.    Ms. Hilberry ................................................................................................. 12

     4.    Sufficient Facts and Data ............................................................................. 16

     5.    Reliable Principles and Methods .................................................................. 17

     6.    Reliably Applied Principles and Methods .................................................... 18

   C.    DOC's Motion Amounts to a Challenge to the Accuracy of Plaintiffs' Experts' Conclusions, Which Is a More Fitting Consideration for Trial ................................. 19

III.  CONCLUSION ........................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*58 Swansea Mall Drive, LLC v. Gator Swansea Prop., LLC*,
  No. 15-13538-RGS, 2017 WL 9885338 (D. Mass. Sept. 20, 2017)........................................19

*Adams v. New England Scaffolding, Inc.*,
  No. 13-cv-12629-FDS, 2015 WL 9412518 (D. Mass. Dec. 22, 2015)...................................13

*Candelario Del Moral v. UBS Fin. Servs. Incorp. of P.R.*,
  No. 08-cv-1833 (PAD), 2014 WL 12726081 (D.P.R. Dec. 3, 2014) ...........................2, 14, 19

*Cipollone v. Yale Indus. Prod., Inc.*,
  202 F.3d 376 (1st Cir. 2000).................................................................................................8

*Cortes-Irizarry v. Corporacion Insular de Seguros*,
  111 F.3d 184 (1st Cir. 1997)...............................................................................................19

*Crowe v. Marchand*,
  506 F.3d 13 (1st Cir. 2007)...........................................................................................15, 16

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993) ...............................................................................................6, 7, 15

*De La Rosa v. 650 Sixth Ave Trevi LLC*,
  No. 13-cv-7997(VEC), 2019 WL 6245408 (S.D.N.Y. Nov. 22, 2019)...................................14

*Den Norske Bank AS v. First Nat'l Bank of Bos.*,
  75 F.3d 49 (1st Cir. 1996).....................................................................................................8

*Disabled in Action v. City of New York*,
  360 F. Supp. 3d 240 (S.D.N.Y. 2019)...................................................................................15

*Ford v. Boston Housing Authority*,
  773 N.E.2d 471 (Mass. App. Ct. 2002) ................................................................................15

*Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar*,
  345 F.3d 15 (1st Cir. 2003).....................................................................................................8

*Holmes v. Godinez*,
  311 F.R.D. 177 (N.D. Ill. 2015)............................................................................................10

*Kumho Tire v. Carmichael*,
  526 U.S. 137 (1999)......................................................................................................6, 16

*Larson v. Kempker*,
  414 F.3d 936 (8th Cir. 2005) ...............................................................................................16

*McBride v. Michigan Dep't of Corr.,*
   294 F. Supp. 3d 695 (E.D. Mich. 2018)...................................................................11

*Pelletier v. Main St. Textiles, LP,*
   470 F.3d 48 (1st Cir. 2006)...................................................................................15

*Perry v. Medeiros,*
   343 N.E. 2d 859 (Mass. 1976) .............................................................................15

*Pierce v. District of Columbia,*
   128 F. Supp. 3d 250 (D.D.C. 2015) .....................................................................11

*Ruiz-Troche v. Pepsi Cola of P. R. Bottling Co.,*
   161 F.3d 77 (1st Cir. 1998)..............................................................................10, 19

*In re Salem,*
   465 F.3d 767 (7th Cir. 2006) ........................................................................2, 14, 19

*United States v. Alzanki,*
   54 F.3d 994 (1st Cir. 1995)....................................................................................8

*United States v. Brown,*
   415 F.3d 1257 (11th Cir. 2005) ....................................................................2, 14, 19

*United States v. Mooney,*
   315 F.3d 54 (1st Cir. 2002).....................................................................................6

*United States v. Vega,*
   813 F.3d 386 (1st Cir. 2016).................................................................................14

*Warford v. Indus. Power Sys., Inc.,*
   553 F. Supp. 2d 28 (D.N.H. 2008)................................................................2, 14, 19

*In Re Zurn Pex Plumbing Prods. Liab. Litig.,*
   644 F.3d 604 (8th Cir. 2011) ...............................................................................19

**Statutes, Rules, and Regulations**

Fed. R. Evid. 702 ............................................................................................. *passim*

I.      **INTRODUCTION**

Massachusetts Department of Correction Defendants' ("DOC")[1] objections to Plaintiffs'

expert witnesses—Judy Anne Shepard-Kegl, Ph.D., Richard Ray,[2] and Gina Hilberry—are

unfounded.  These experts all have specialized knowledge that is not generally known in the

community and that would be of assistance to the Court in its determination of several key

issues.  Among other things, all three experts will offer testimony on why DOC's emergency

notification procedures are insufficient.  Dr. Shepard-Kegl will describe the linguistic limitations

of deaf and hard-of-hearing individuals, including the seven Named Plaintiffs, with respect to

understanding written and spoken English, and explain how DOC's current policies and practices

do not accommodate those limitations.  Mr. Ray will offer testimony on technological options

available to effectively notify deaf and hearing-impaired individuals of emergencies, many of

which DOC has ignored.  And Ms. Hilberry will address the regulations and standards relevant

to visual alarms and rebut testimony proffered by DOC on its overinflated estimates for the cost

of such systems.

DOC makes various objections to these witnesses.  For example, they seek to exclude

testimony by all three experts that DOC's policies and procedures for notifying deaf and hard-of-

hearing inmates of emergencies are inadequate, alleging that such testimony is not based upon

expert knowledge or methodology.  They also seek to exclude Ms. Hilberry's opinions regarding

certain regulations and standards as impermissible testimony concerning the law, and her

---

[1] "DOC" refers to the Department of Correction Defendants, including the Massachusetts Department of Correction, Carol A. Mici, Commissioner of the Massachusetts Department of Correction, Jennifer A. Gaffney, Deputy Commissioner of Classification, Programs, and Reentry Division, Suzanne Thibault, Superintendent of MCI-Shirley, Steven Silva, Superintendent of MCI-Norfolk, Lisa Mitchell, Superintendent of the Massachusetts Treatment Center, and Kyle Pelletier, Acting Superintendent of MCI-Framingham.  Several of these parties, named in their official capacities, have been substituted as success in office, under Fed. R. Civ. P. 25(d), during the course of this litigation.
[2] Plaintiffs had previously identified Mr. Ray as an expert, along with two other individuals, on April 20, 2018. DOC does not challenge those expert reports.

opinions regarding DOC's estimates for installing visual alarms in its facilities for her alleged

failure to apply an expert methodology.  As set forth more fully below, these objections are

baseless.  Moreover, given that the Court and not a jury will decide the merits of Plaintiffs'

claims, there is little to be gained in excluding such testimony as the Court may address DOC's

concerns with appropriate context, rather than prior to trial on the basis of motion practice.

*Warford v. Indus. Power Sys., Inc.*, 553 F. Supp. 2d 28, 31 (D.N.H. 2008) (citing *In re Salem*,

465 F.3d 767, 777 (7th Cir. 2006); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir.

2005)) ("In a bench trial, . . . the court does not err in admitting the evidence subject to the ability

later to exclude it or disregard it if it turns out not to meet the standard of reliability established

by Rule 702.'"); *Candelario Del Moral v. UBS Fin. Servs. Incorp. of P.R.*, No. 08-cv-1833

(PAD), 2014 WL 12726081, at *2 (D.P.R. Dec. 3, 2014) (stating that the gatekeeping function

described in *Daubert* "is largely irrelevant in the context of a bench trial").

**A.**     **Judy Anne Shepard-Kegl, Ph.D**

Dr. Shepard-Kegl is a tenured professor in the linguistics department of the University of

Southern Maine.  She has been teaching courses on American Sign Language ("ASL") and

interpretation since 1978 and has written extensively on the cultural and physical challenges

faced by the Deaf population, as well as compliance with the Americans with Disabilities Act

("ADA").  Dr. Shepard-Kegl has published thirty-two peer reviewed articles; dozens of abstracts,

short papers, and invited journal and conference articles; three books; and over thirty edited

volumes or articles therein; and her work has been the subject of countless articles.  In addition

to her teaching responsibilities, Dr. Shepard-Kegl has also been a certified interpreter of ASL for

decades and has served as a freelance ASL interpreter since 2000.

Between 2004 and 2007, Dr. Shepard-Kegl served as a representative to the Commission

on Collegiate Interpreter Education ("CCIE") for development and implementation of an

accreditation system for Interpreter Training Program in the U.S. and Canada.  She was the

Commissioner of the CCIE from 2010 to 2014 and continues to serve on that accreditation body.

In 2010, Dr. Shepard-Kegl was a founding member of Independence Without Fear, Maine's

Support Service Provider Project, and continues to serve as an approved support service

provider. From 2011 to the present, she has served as a Commissioner, Division of the Deaf,

Hard of Hearing and Late Deafened for the Maine Department of Labor.  And in the last five

years, Dr. Shepard-Kegl has testified as an expert witness over twenty times.

Dr. Shepard-Kegl provided background and opinions on the following based on her

extensive experience and specialized, scientific knowledge as an ASL interpreter, Doctor of

Linguistics, professional advocate for d/Deaf and hard-of-hearing people, and expert:

- The linguistic capabilities of the seven Named Plaintiffs, including their limitations with
  respect to understanding written and spoken English;

- The utility of DOC's current policies and practices with respect to notifying deaf and
  hard-of-hearing prisoners of emergency events in light of the above information; and

- Recommendations for additional assistive technology, particularly visual emergency
  alarms, that would fit the needs of the deaf and hard-of-hearing prisoners in DOC
  custody.

## B.    Richard Lorenzo Ray

Mr. Ray is a deaf individual who, since 1992 has worked in the City of Los Angeles

Department on Disability assessing, monitoring, and ensuring the city's compliance with the

ADA.  Mr. Ray currently serves as the Department on Disability's ADA Technology Access

Coordinator, and his experience includes, among other things, advising law enforcement

agencies on ADA compliance.  For example, he has assisted in the implementation of a new

telecommunications system designed to accommodate deaf individuals at the Los Angeles Police

Department ("LAPD") Metropolitan Detention Center and its community stations' public

counters, booking, housing, medical, and health care areas.

Mr. Ray's educational background includes a Disability Rights Masters Certificate from Loyola Law School in Los Angeles, CA.  He has served on numerous local, state, and federal commissions, including the Federal Communications Commission's ("FCC") Disability Advisory Committee.  Currently, he serves as a member of several committees or associations, including service as the co-chair of the National Emergency Number Association and as a member of the California Commission on Disability Access, Education, and Outreach Committee.  In the past, Mr. Ray has served as a co-chair of the FCC's Emergency Access Advisory Committee and president of the California Association of the Deaf. He has received numerous awards and recognition for his service, including most recently his induction into the National Emergency Number Association's Hall of Fame.

Further, Mr. Ray has conducted over two-dozen seminars and workshop presentations, including several presentations to various federal agencies such as the FCC, the Federal Emergency Management Agency, and the Centers for Disease Control and Prevention.  He has also authored several articles on wireless technology in the deaf community and served as an expert in multiple cases concerning access for deaf and hard-of-hearing individuals in the corrections context.  Finally, he has served as an expert in seven cases in the last five years, all of which involved correctional facilities.

Mr. Ray will assist the Court by providing background information and opinions on the following based on his experience as a deaf individual coupled with his specialized and technical expertise as a professional monitor and assessor of ADA compliance and expert on accessible technology:

- The availability of and need for various assistive devices and services in a prison setting, including in-cell visual alarms;

4

- Correctional-facility-specific considerations with respect to testing and installation of such assistive device technology; and

- The manner in which such assistive device technology could be installed and used in DOC facilities.

### C.      Gina Hilberry, AIA LEED-AP CCS

Ms. Hilberry has been a practicing architect for over 30 years, and for the last 15 years has served as an expert consultant to the Department of Justice on ADA and Fair Housing Act ("Fair Housing") litigation.  She has provided architectural services and ADA and Fair Housing consulting for both private entities and state and federal agencies, such as Title II consulting for the United States Department of Justice ("DOJ") Disability Rights Section and for the 22nd Circuit Court of Missouri, including for its detention facilities, and a state-wide evaluation of the facilities at the Alabama Department of Corrections.  Ms. Hilberry is also a senior consulting architect at the Institute for Human Centered Design ("IHCD") in Boston, MA.  Recently, IHCD was hired by the Massachusetts Division of Capital Asset Management and Maintenance ("DCAMM") to provide DCAMM and the Massachusetts Department of Youth Services ("DYS") with evaluations of programming and services provided in DYS-owned juvenile detention facilities, and Ms. Hilberry serves as a consultant on that project.  The work includes accessibility evaluations, work on the comprehensive plan, and coordination with the overall master plan work that is underway.  *See* Ex. 1 (Curriculum Vitae of Gina Hilberry) at 1.

Ms. Hilberry has served on the Access Board on the Public Rights-of-Way Committee and worked on that Committee's Technical Assistance Manual.  She also serves as a Vice-Chair of the American National Standards Institute A117.1 Standards Development Committee, Chair of its Scoping Task Group, and Co-Chair of its Wheeled Mobility Task Group.  In addition, she is a LEED Accredited Professional, an International Code Council Accessibility Inspector/Plans Examiner, and American Institute of Architects Professional Member.  Ms. Hilberry taught for

more than 15 years as adjunct faculty at the College of Architecture at Washington University in

St. Louis and has given dozens of lectures on architectural accessibility design.  She has testified

as an expert witness in four cases in the last five years.

Ms. Hilberry provided background and opinions on the following based on her extensive

technical expertise and specialized knowledge as an architect and ADA consultant:

- A rebuttal to DOC's cost estimates with respect to the installation of in-cell visual alarms, including the underlying assumptions and the necessity of the additional expenditures incorporated into those estimates;

- A rebuttal to DOC's interpretation of the ADA Architectural Access Guidelines ("ADAAAG"), Massachusetts State Building Code ("MASBC"), and the Massachusetts Architectural Access Board ("MAAB") requirements as to: (1) the undefined term "independent means of egress," (2) whether visual alarm installation triggers additional required in-cell upgrades; and

- The additional accommodations DOC could implement to inform deaf and hard-of-hearing prisoners of emergencies, such as clustering, and the inadequacy of DOC's beta testing of several of the available technological options.

## II.  ARGUMENT

### A.  Testimony of Expert Witnesses with Varying Expertise Is Admissible Under Fed. R. Evid. 702

Federal Rule of Evidence 702 ("Rule 702") provides that the opinion testimony of a

witness "qualified as an expert by knowledge, skill, experience, training, or education" is

permissible if it satisfies four requirements: "(a) the expert's scientific, technical, or other

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case."

In addition to Rule 702, the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, set forth several factors that may assist a court in its "gatekeeper" function of determining

the admissibility of scientific expert testimony, making clear that "the inquiry is a flexible one." 509 U.S. 579, 592-95 (1993). The factors identified are not a "definitive checklist or test" and the court's "gatekeeping inquiry must be 'tied to the facts' of a particular 'case.'" *Kumho Tire v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 591, 592) (additional citations omitted); *see United States v. Mooney*, 315 F.3d 54, 62 (1st Cir. 2002) ("These factors, however, are not definitive or exhaustive, and the trial judge enjoys broad latitude to use other factors to evaluate reliability."). Experts whose opinions are based in non-scientific, specialized knowledge and experience can undoubtedly be instrumental in assisting fact-finders. *See Kumho Tire Co.*, 526 U.S. at 148-49 ("Experts of all kinds tie observations to conclusions through . . . 'general truths derived from . . . specialized experience.' . . . And whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony will often rest 'upon an experience confessedly foreign in kind to [the jury's] own.' The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury elevate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge." (internal citations omitted)).

At bottom, both Rule 702 and *Daubert* ask the Court to determine whether the evidence is relevant and reliable. *See Daubert*, 509 U.S. at 597 (observing that the Federal Rules of Evidence and particularly Rule 702 "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). DOC's mechanical recitation of the *Daubert* factors and attempts to apply them to the testimony of Plaintiffs' experts is incompatible with the analysis called for by *Daubert* and its progeny. As

discussed below, the opinions offered by Plaintiffs' experts are both relevant and reliable and should be admitted.

>    **B.    Plaintiffs' Experts Meet the Requirements of Rule 702**

DOC incorrectly asserts that all three experts lack "specialized knowledge or methodologies" with respect to assessing DOC's policies and practices to notify deaf and hard-of-hearing prisoners of emergencies.  DOC makes no attempt to explain to the Court why this is so, other than to state that Plaintiffs' experts, despite their diverse backgrounds, all reach the same conclusion that DOC's emergency notification practices are inadequate.  However, this hardly indicates a lack of specialized expertise or knowledge.  On the contrary, all three experts offer opinions based in their own background and extensive areas of experience—linguistic (Dr. Shepard-Kegl), technological (Mr. Ray), and architectural (Ms. Hilberry)—that DOC's actions are deficient.  DOC cites no caselaw suggesting that the fact the Plaintiffs' experts agree on a conclusion somehow casts doubt on their knowledge or methodology.  Indeed, the fact that they reach the same conclusion despite coming from three different perspectives reinforces the relevance and reliability of their testimony in this case.  *See Den Norske Bank AS v. First Nat'l Bank of Bos.*, 75 F.3d 49, 57 (1st Cir. 1996) ("In non-technical areas, long experience in a field can confer expertise upon a witness.").

Rule 702(a) provides than an expert's specialized knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue."  Accordingly, "[t]he ultimate purpose" of the court's inquiry into reliability and relevance of expert evidence offered is to determine whether it may be helpful to the fact-finder in resolving facts in dispute.  *Cipollone v. Yale Indus. Prod., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000).  To make this determination, the Court must consider, "given the proffered expert's background, whether the scientific, technical, or other specialized knowledge he offers "will assist the trier better to understand a fact in issue."

*Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar*, 345 F.3d 15, 24 (1st Cir. 2003) (citing *United States v. Alzanki*, 54 F.3d 994, 1005 (1st Cir. 1995)).

        1.   <u>Dr. Shepard-Kegl</u>

      DOC's contention that Dr. Shepard-Kegl's opinions are not based on specialized knowledge is patently incorrect.  As outlined above, Dr. Shepard-Kegl is a tenured linguistics professor with more than 40 years of experience in interpretation and serves as the Director of Signed Language Research Laboratory at the University of Southern Maine.  She has conducted extensive research into the linguistic properties of ASL, including as the Principal Investigator or Co-Investigator on numerous grants from various state and federal agencies, and has published extensively on the linguistic capabilities of deaf and hard-of-hearing individuals.  Dr. Shepard-Kegl has also lived closely with deaf people for much of her life, including her daughter who is a profoundly Deaf person.  Even DOC acknowledges in a footnote that Dr. Shepard-Kegl possesses relevant expertise and that some of her observations are "useful," including her opinion that the accuracy of lip-reading is likely to be impaired in an emergency.  Mem. Supp. DOC Defs.' Mot. Exclude Expert Evid. ("DOC's Mem.") at 4 n.3.  Given her background and decades-long experience with the Deaf population, Dr. Shepard-Kegl possesses the "specialized knowledge" required by Rule 702.  Moreover, her assessments of Plaintiffs' communication needs and abilities were conducted using methodologies honed over many years to beget reliable results.  As. Dr. Shepard-Kegl explained, she "look[ed] at each client in an individualized way, using a *single case study* methodology," because "[t]he need for individualized assessment is noted by almost every researcher in the field of deafness . . . ."  Ex. 2 (App'x C to Expert Rpt. Dr. Judy Anne Shepard-Kegl, Ph.D) ("Dr. Shepard-Kegl App'x C) at 1.

      Dr. Shepard-Kegl's testimony will also help the court understand relevant issues in this matter.  Her report provides a thorough description of Deaf culture and common limitations on

the deaf population's abilities to understand, read, or lip-read English.  From that base of knowledge, she explains the role of both interpretation and technological accommodations for the Deaf population.  She also explains how she conducted individual assessments of the Named Plaintiffs to determine which auxiliary aids would permit each to effectively communicate.  Thus, her testimony is particularly relevant to the determination of whether deaf and hard-of-hearing individuals can appropriately understand and act upon the information they receive from DOC during emergency events utilizing current policies and practices.  All of this specialized knowledge is not generally known in the community and would be of assistance to the Court in its determination of whether DOC's current policies and practices deprive prisoners with hearing disabilities effective and reliable access to DOC's emergency notification services.

DOC's real argument appears to be that they dispute Dr. Shepard-Kegl's opinions.  *See* DOC's Mem. at 4 n.3. (stating that her observations "do not substantiate the conclusion that the DOC should not rely on correction officers to notify deaf and hard-of-hearing inmates of emergencies").  This complaint goes to the weight of Dr. Shepard-Kegl's testimony, not its admissibility, and "*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *Ruiz-Troche v. Pepsi Cola of P. R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).

> 2.   Mr. Ray

DOC also argues that Mr. Ray lacks the specialized knowledge required to opine on the sufficiency of DOC's policies and practices to notify deaf and hard-of-hearing individuals of an emergency event.  Here too, they miss the mark.  Mr. Ray is a deaf individual who has spent decades in the City of Los Angeles Department on Disability assessing, monitoring, and ensuring the city's compliance with the ADA, and currently serves as its ADA Technology Access Coordinator.  His experience includes, among other things, advising law enforcement agencies

on ADA compliance.  Mr. Ray also serves as the Co-Chair of the National Emergency Number Association and as a member of several other related organizations both at the local and national level, and has served as an expert in over a dozen cases regarding access to programs and services for deaf and hard-of-hearing prisoners in correctional facilities.  These personal and professional experiences illustrate Mr. Ray's specialized knowledge with respect to assistive technology for deaf and hard-of-hearing individuals in the correctional context.  *See Holmes v. Godinez*, 311 F.R.D. 177, 210-11 (N.D. Ill. 2015) (finding plaintiffs' expert, who had twenty years of experience as the ADA coordinator in a state department of correctional services "more than qualifie[d] . . . to offer opinions regarding [defendants'] ADA compliance").

Mr. Ray's specialized knowledge would aid the Court.  His testimony includes an introduction to and description of a wide array of technology available with respect to visual emergency notification systems that DOC could employ.  He also testifies as to the specific needs and concerns facing deaf and hard-of-hearing individuals during emergency events and applies his experience to analyze why the DOC's current policies and practices are insufficient to notify deaf and hard-of-hearing prisoners of an emergency.  This is precisely the sort of specialized knowledge and experience that is not generally available to the community and would provide the Court with context for DOC's refusal to provide in-cell visual emergency alarms.  Indeed, several other courts have admitted Mr. Ray's expert testimony on emergency notification systems, including over challenges similar to those DOC makes here.  *See, e.g.*, *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 275 n.13 (D.D.C. 2015) (admitting Mr. Ray's expert testimony over defendant's objection that it was not based on sufficient facts or reliable scientific methods and holding that such objections "clearly relate to the *weight* of the proffered expert testimony, not its admissibility"); *McBride v. Michigan Dep't of Corr.*, 294 F.

Supp. 3d 695, 718-19 (E.D. Mich. 2018) (taking into account Mr. Ray's expert testimony regarding emergency notification systems).

        3.     <u>Ms. Hilberry</u>

DOC mounts two challenges to Ms. Hilberry's proposed expert opinions.

        a)     *Ms. Hilberry Has Specialized Knowledge that Will Assist the Court*

DOC alleges that Ms. Hilberry lacks the specialized knowledge required to opine on the sufficiency of DOC's policies and practices to notify deaf and hard-of-hearing individuals of an emergency. This allegation is incorrect. As described above, Ms. Hilberry has more than 30 years of experience as a practicing architect and more than 15 years of experience as an expert consultant to the Department of Justice on ADA and Fair Housing litigation. She provides architectural services and ADA and Fair Housing consulting to private and public entities alike, including the DOJ, Alabama Department of Corrections, 22nd Circuit Court of Missouri, and DCAMM. Ms. Hilberry has also served on the Access Board on the Public Rights-of-Way Advisory Committee and worked on its Technical Assistance Manual. Finally, she has taught for over 15 years as an adjunct faculty in the school of architecture at Washington University in St. Louis. This wealth of professional experience in architectural services, with a demonstrated focus on accessibility design and ADA compliance, establishes that she has the "technical and specialized knowledge" contemplated by Rule 702.

Ms. Hilberry's testimony would aid the Court in its understanding relevant issues to this matter. She provides her opinion, as an architect and ADA compliance consultant with experience in correctional facilities, regarding the adequacy of DOC's current policies and procedures in accommodating deaf and hard-of-hearing prisoners based on the evidence, including DOC's policies and deposition testimony. Ms. Hilberry provides an analysis of DOC's understanding with respect to whether the installation of visual alarms is required by technical

rules that architects must understand and apply in their practice – here, the ADAAAG, MASBC, and MAAB.  Her report also includes an evaluation of DOC's cost estimates with respect to the installation of in-cell visual alarms, including the methodology used, underlying assumptions, and the necessity of the additional expenditures incorporated into those estimates, and provides recommendations concerning alternate avenues for accommodating Plaintiffs' disabilities based on her experience. Ms. Hilberry's specialized knowledge as an architect is not generally known in the community and would be of assistance to the Court determining whether DOC's current policies and practices deprive plaintiffs of adequate access to DOC's emergency notification services.

> ### b)   Ms. Hilberry's Testimony on Architectural Regulations is Permissible

DOC also argues that Ms. Hilberry's testimony regarding the ADAAG, the MASBC, and the MAAB regulations is improper because it goes to a legal question.  As an initial matter, DOC mischaracterizes Ms. Hilberry's testimony as a conclusion that under the relevant regulations and standards, "visual emergency [alarms] are required in the cells of all medium and maximum security inmates housed in general population."  DOC's Mem. at 5.  But Ms. Hilberry makes no such conclusion.  Rather, she explains that those regulations and standards "do not in any way preclude" the installation of visual emergency alarms or other devices in DOC facilities or otherwise relieve DOC of its obligation to provide deaf and hard-of-hearing prisoners with effective access to DOC's emergency notification system.  Expert Rpt. Gina Hilberry at 11-12.

DOC also overstates the relevant caselaw.  While "an expert witness normally should not be permitted to testify as to an ultimate legal conclusion, such as an opinion that a defendant was negligent," *Adams v. New England Scaffolding, Inc.*, No. 13-cv-12629-FDS, 2015 WL 9412518, at *7 (D. Mass. Dec. 22, 2015) (internal quotation marks omitted), "there is no blanket

prohibition on expert testimony concerning the law," *id.* at *5 (allowing plaintiff's expert to testify why defendant did not comply with regulations and whether that constituted regulatory violation, but not to conclude that defendant's lack of safety precautions caused injury or that defendant had regulatory or contractual duty to provide safety precautions).  Moreover, courts are granted "wide discretion . . . to admit or exclude expert testimony, including expert testimony concerning the existence or application of a regulation." *Id.* at *5 n.3.  Indeed, "[i]n a bench trial, . . . 'where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.'" *Warford v. Indus. Power Sys., Inc.*, 553 F. Supp. 2d 28, 31 (D.N.H. 2008) (citing *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006); *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005)); *Candelario Del Moral*, 2014 WL 12726081, at *2 ("Since the case sub-judice will not be tried before a jury, the problems attendant to an expert's legal opinions do not exist.  Whatever opinion testimony is provided as to the law, will not control the Court's determination on what the law is.").

Ms. Hilberry's testimony, offered as a rebuttal to DOC's assertions and interpretations of DOC's legal obligations under the ADAAG, MASBC, and MAAB, is not a conclusion about the ultimate legal question—whether DOC has violated the ADA.  DOC uses a lay witness, DOC architect Jeffrey Quick, to argue that current standards for accessible design and code render the installation of visual alarms unnecessary and that, in any event, such installation would be too expensive due to the need to upgrade in-cell alarms across DOC and the required corollary upgrades.  Ms. Hilberry's opinions on these hotly contested technical points proffered by Mr.

Quick, who has not been offered or qualified as an expert,[3] could aid the Court in assessing

DOC's undue burden defense in this matter.  *See id.* ("[I]t is frequently the case that the acts or

omissions of the parties, or their legal or contractual obligations, can only be fully understood in

the context of a particular regulatory environment. Such a regulatory environment often needs to

be explained to lay persons, and therefore expert testimony may be helpful to the jury to

understand the issues in the case."); *De La Rosa v. 650 Sixth Ave Trevi LLC*, No. 13-cv-

7997(VEC), 2019 WL 6245408, at * 3 (S.D.N.Y. Nov. 22, 2019) ("Whether at least some of the

'architectural features' of [the building at issue] comply with relevant ADA accessibility

standards may not be 'entirely resolvable by lay persons' without expert help.") (quoting

*Disabled in Action v. City of New York*, 360 F. Supp. 3d 240, 245 (S.D.N.Y. 2019)).  Nothing in

Ms. Hilberry's testimony encroaches on the Court's ultimate responsibility to determine whether

DOC violated the ADA.[4]

---

[3] As noted in Plaintiffs' Motion to Strike, Mr. Quick's testimony on these issues should be stricken as impermissible expert testimony.  *See* Motion to Strike at 6; *United States v. Vega*, 813 F.3d 386, 395 (1st Cir. 2016) (finding that knowledge of relevant law obtained during the course of witnesses' experience did "not make it 'personal knowledge' qualifying as lay expertise under Rule 701," and those witnesses must first be qualified as experts).

[4] The two cases upon which DOC relies, *Perry v. Medeiros*, 343 N.E. 2d 859 (Mass. 1976), and *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48 (1st Cir. 2006), are inapposite.  *Perry* was decided almost twenty years prior to *Daubert*, applied irrelevant state law, and has never been cited in federal court for that evidentiary holding.  It is also factually distinguishable.  Unlike the proffered expert in *Perry*, Ms. Hilberry offers no opinion on the ultimate legal question—whether DOC violated the ADA.  *Perry*'s holding was also narrowed in *Ford v. Boston Housing Authority*, 773 N.E.2d 471 (Mass. App. Ct. 2002).  There, the court stated that *Perry* "did not establish an inflexible rule that expert testimony interpreting or explaining the requirements of a complicated code is impermissible."  *Id.* at 473.  It upheld the admission of expert testimony on whether the dwelling at issue complied with the MASBC, stating that "[i]n view of the complexity of the State Building Code, the judge had discretion to admit the expert's testimony."  *Id.* at 473-74.

Further, the First Circuit in *Pelletier* upheld the exclusion of expert testimony on "which OSHA regulations were relevant" on the ground that it would have "usurped the court's function in instructing the jury on the law."  *Id.* at 52, 54–55.  But as described above, Ms. Hilberry's testimony is offered to rebut lay witness Mr. Quick's understanding of the regulatory scheme and will not "usurp the court's function" because she does not opine on the ultimate legal issue.

4.    Sufficient Facts and Data

Plaintiffs' experts also considered sufficient facts and data to satisfy Rule 702(b).

*Daubert* states that "an expert is permitted wide latitude to offer opinions, including those that

are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592.  Moreover,

courts routinely find that challenges to the factual basis of an expert's opinion go to the

credibility of the opinion, not its admissibility.  *See Crowe v. Marchand*, 506 F.3d 13, 18 (1st

Cir. 2007) (stating that questions about "the factual underpinnings of an expert's investigation[]

often go to the weight of the proffered testimony, not to its admissibility").

DOC does not appear to challenge the facts or data upon which Plaintiffs' experts rely.

Nor could it.  All three experts received broad range of information to review, including:

interrogatory responses; deposition testimony of witnesses for both parties; DOC policies; DOC

cost estimates, beta testing results, emails, and meeting minutes; photographs of visual alarms in

six DOC facilities; and relevant statutes and regulations such as the MASBC and MAAB

guidelines.[5]  Each expert also reviewed additional source material from their own area of

expertise.  For example, Ms. Hilberry and Mr. Ray also reviewed information about various

technology for visual or tactile emergency notification.  Moreover, Dr. Shepard-Kegl consulted

dozens of academic articles and publications regarding the Deaf population and ASL and

conducted in-person assessments of all Named Plaintiffs.  Any quarrels with the sufficiency of

the factual basis for their opinions is best left for cross-examination.  *Id.* at 18 (stating that

questions regarding factual basis for expert's opinion were "matters . . . for the jury, not . . . the

---

[5] DOC's own expert, Ms. Baker, bases her opinion that DOC's procedures are adequate on the same set of facts and data, excepting three additional site visits conducted at MCI-Framingham, MCI-Cedar Junction, and MCI-Norfolk, where she viewed visual alarms installed in common areas.  *See* Ex. 3 (Expert Rpt. Eileen D. Baker) at 4.  Because Plaintiffs' and DOC's experts use the same facts and data, DOC cannot argue that Plaintiffs' expert testimony is inadmissible on this basis.

court"); *see also Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination" (quotations and citations omitted)).

       5.    <u>Reliable Principles and Methods</u>

Plaintiffs' experts' testimony is also the product of reliable principles and methods. When considering the reliability of an expert's principles and methods, courts may take into account the expert's personal knowledge or experience. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). DOC alleges that none of the Plaintiffs' experts applied an "expert" or "specialized" methodology to their analysis of DOC's policies and practices for emergency notification, but do not explain the basis for their allegation.

       a)    *Dr. Shepard-Kegl*

As an initial matter, DOC has ignored Dr. Shepard-Kegl's robust explanation of the methodology she applied in her individual assessments of the Named Plaintiffs. *See* Ex 2 (Dr. Shepard-Kegl App'x C) at 1-32. For example, she explained that "the need for individualized assessment is noted by almost every researcher in the field of deafness, especially regarding reading abilities," and provided a citation for that assertion. *Id.* at 2. Moreover, she explained her use of several standardized assessment techniques, including the *Flynt Cooter Reading Inventory* and the *San Diego Reading Screening*. *Id.* at 21-24. DOC has provided no explanation as to why Dr. Shepard-Kegl's methodology is deficient or unreliable.

       b)    *Mr. Ray*

Mr. Ray possesses a great deal of knowledge and experience in the specialized areas of communication by and with deaf and hard-of-hearing individuals. He also provides an explanation of the experiences from which he draws and the technology he has considered. For

example, Mr. Ray provides a non-exhaustive list of fourteen different assistive devices that

could, after being tested, effectively alert a deaf or hard-of-hearing prisoner in the event of an

emergency.  *See* Ex. 4 (Ex. C to Reply Expert Rpt. Richard Lorenzo Ray).  The breadth, depth,

and length of his experience, and his description of the technology he has considered, establishes

the reliability of his principles and methods for his non-scientific expert report.

c)      *Ms. Hilberry*

Similarly, Ms. Hilberry's testimony is based upon her wealth of knowledge and

experience in the specialized area of ADA accessibility design.  For example, DOC ignores

Section VI of Ms. Hilberry's report, which reflects her understanding of accessibility

considerations specific to correctional facilities.  This knowledge and experience underscore the

reliability of her principles and methods.

6.    <u>Reliably Applied Principles and Methods</u>

Finally, all three of Plaintiffs' experts applied the principles and methods to the facts of

this case in a reliable manner.  For example, Dr. Shepard-Kegl explains the academic

underpinnings for and the experiences upon which she bases her expert testimony, and she relies

heavily upon primary source material—the individual assessments of the Named Plaintiffs she

herself completed—for her conclusions.  Mr. Ray's report also reflects a sufficient appreciation

of the facts of the case, citing a broad range of documentary and testimonial evidence, and

repeatedly explaining the experiences upon which he bases his testimony.

Similarly, Ms. Hilberry's report illustrates the wealth of information she used to make her

conclusions.  For example, as noted above, Section VI of her report explains the avenues

available to DOC to supplement their emergency notification system, reflects the application of

her experience to the facts of the case.  Moreover, DOC's argument that Ms. Hilberry did not

apply an "expert" or "specialized" methodology with respect to her analysis of DOC's cost

18

estimates for the installation of visual alarms misses the mark.  DOC focuses specifically on her statement that "[i]t only seems logical that 2 notification devices would cost significantly less than 16" to argue that she must not have used an expert methodology in her report.  *See* Defs.' Mem. at 6.  But it ignores her analysis of the estimates in evidence, including DOC's methodology and the underlying assumptions it relied upon to create its own estimates for the installation of visual emergency alarms—an analysis based on her decades of experience in architectural design for accessibility and ADA compliance.  Thus, Ms. Hilberry's report demonstrates that she reliably applied the principles and methods she uses as an architect and consultant to the facts of this case.

### C. DOC's Motion Amounts to a Challenge to the Accuracy of Plaintiffs' Experts' Conclusions, Which Is a More Fitting Consideration for Trial

DOC's motion is, in essence, a challenge to the accuracy of Plaintiffs' experts' conclusions.  But this line of attack is more properly tested during the adversarial process.  *See Ruiz-Troche*, 161 F.3d at 85 ("As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." (internal citations and quotation marks omitted)).  "[C]ourts must be cautious—except when defects are obvious on the face of a proffer—not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility."  *Cortes-Irizarry v. Corporacion Insular de Seguros*, 111 F.3d 184, 188 (1st Cir. 1997).  This is particularly true at the summary judgment stage, *id.*, and such a cautious approach "is even more warranted in a bench trial," *58 Swansea Mall Drive, LLC v. Gator Swansea Prop., LLC*, No. 15-13538-RGS, 2017 WL 9885338, at *1 (D. Mass. Sept. 20, 2017) (first citing *In Re Zurn Pex Plumbing Prods.*

*Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011); then citing *United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005)); *Warford*, 553 F. Supp. 2d at 31 (quoting *In re Salem*, 465 F.3d at 777) (stating that during a bench trial, "the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702'"); *Candelario Del Moral*, 2014 WL 12726081, at *2 (stating that the court's gatekeeping function "is largely irrelevant in the context of a bench trial").  Accordingly, the Court would be well within its discretion to defer ruling on the admissibility of the Plaintiffs' expert opinions until trial.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, DOC's Motion to Exclude Expert Evidence (Doc No. 227) should be denied.


 Date: January 28, 2020                              Respectfully submitted,

                                                     **Plaintiffs Leonard Briggs, George
                                                     Skinder, Rolando S. Jimenez, Louis
                                                     Markham, Francis McGowan, Eric
                                                     Roldan, and Jennifer Ward,**
                                                     By their attorneys,

                                                     */s/ Lisa J. Pirozzolo*
                                                     Lisa J. Pirozzolo, BBO #561922
                                                     Lindsay Kosan, BBO #688762
                                                     Alexandra B. Lavin, BBO #687785
                                                     WILMER CUTLER PICKERING HALE AND
                                                     DORR LLP
                                                     60 State Street
                                                     Boston, MA 02109
                                                     (617) 526-6000
                                                     lisa.pirozzolo@wilmerhale.com
                                                     linday.kosan@wilmerhale.com
                                                     alexandra.lavin@wilmerhale.com

                                                     */s/ James R. Pingeon*
                                                     James R. Pingeon, BBO #541852

jpingeon@plsma.org
PRISONERS' LEGAL SERVICES
10 Winthrop Square, 3rd Floor
Boston, MA 02110
(617) 482-2773

*/s/ Tatum A. Pritchard*
Tatum A. Pritchard, BBO #664502
tpritchard@dlc-ma.org
DISABILITY LAW CENTER, INC.
11 Beacon Street, Suite 925
Boston, MA 02108
(617) 723-8455

*/s/ Emily Gunston*
Emily Gunston (*pro hac vice*)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS & URBAN AFFAIRS
350 S. Grand Avenue
11 DuPont Circle, NW, Suite 400
Washington, DC 20036
(202) 319-1000

## CERTIFICATE OF SERVICE

I, Lisa J. Pirozzolo, hereby certify that a true and accurate copy of this document was served via ECF to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as nonregistered participants on January 28, 2020.

*/s/ Lisa J. Pirozzolo*
Lisa J. Pirozzolo