UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-40162-GAO

LEONARD BRIGGS, GEORGE SKINDER, LOUIS MARKHAM, FRANCIS MCGOWAN, ERIC ROLDAN, ROLANDO S. JIMENEZ, AND JENNIFER WARD, on behalf of themselves and all others similarly situated,
Plaintiffs,

v.

MASSACHUSETTS DEPARTMENT OF CORRECTION; CAROL A. MICI,[1] Commissioner of the Massachusetts Department of Correction; JENNIFER GAFFNEY, Deputy Commissioner of Classification, Programs, and Reentry Division; SUZANNE THIBAULT, Superintendent of MCI-Shirley; STEVEN SILVA, Superintendent of MCI-Norfolk; LISA MITCHELL, Superintendent of the Massachusetts Treatment Center; KYLE PELLETIER, Acting Superintendent of MCI-Framingham; and MASSACHUSETTS PARTNERSHIP FOR CORRECTIONAL HEALTHCARE, LLC,
Defendants.

OPINION AND ORDER
August 20, 2021

O'TOOLE, S.D.J.

The plaintiffs are seven deaf and hard-of-hearing persons who are or were in the custody of the Massachusetts Department of Correction ("DOC"). The parties have settled most of the plaintiffs' claims through a comprehensive settlement agreement. The plaintiffs' remaining claims are that DOC facilities lack effective systems for notifying deaf and hard of hearing prisoners of emergency alarms and announcements, thus placing them at risk of serious physical injury and other harms. The claimed deficiencies are alleged to be in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, the Rehabilitation Act, 29 U.S.C. § 794(a), et seq., and the Eighth and the Fourteenth Amendments. Currently pending are the defendants' motion for

---

[1] These parties, named in their official capacities, have been substituted as successors in office, under Fed. R. Civ. P. 25(d).

summary judgment (dkt. no. 224), defendants' motion to exclude expert evidence (dkt. no. 227), and plaintiffs' motion to strike portions of the affidavit of Jeffrey Quick (dkt. no. 247).

**I.    Brief Factual Background**

The following factual summary is not disputed unless otherwise noted:

Each DOC facility has written fire safety procedures which include an emergency evacuation plan. Each plan also must be certified by an independent inspector trained in the applicable fire codes.

There are sixteen DOC facilities, and each has smoke detectors and alarms, carbon monoxide detectors and alarms, fire extinguishers, fire blankets, and smoke/fire evacuation hoods. Visual alarms may not be in place for each deaf or hard of hearing inmate. According to a formal DOC procedure, if an inmate has been identified as deaf or hearing impaired, a red dot is to be placed on the lower right corner of his or her bed book card that is used by the housing unit office. The bed book is a folder stored at the particular unit's control center that contains the names, commitment numbers, and photographs of all inmates in a particular unit. The purpose of the red dot is to alert staff that the inmate has a hearing or visual impairment and may need personal assistance during an evacuation. The red dot written procedure is set out in the DOC Fire Prevention and Safety procedures policy:

> If an inmate has been identified as deaf and/or hearing impaired, blind, and/or visually impaired in the Medical Restrictions screen in IMS, a red dot shall be placed on the lower right corner of his/her bed book card for use by the housing unit officer. This will alert staff that the inmate has impairment, and may need additional assistance during an evacuation.

(Commonwealth of Mass. Dept. of Correction, 103 DOC 730, Fire Prevention & Safety, 730.04(A) Ex. F) (dkt. no. 246-6).) The red dot procedures depend on individual correction officers and staff to take appropriate steps during an evacuation to assist inmates who may need assistance because

of an impairment. Whether the red dot procedures and other plans are appropriately implemented to alert staff properly to inmates who require assistance during evacuation is sharply disputed. The plaintiffs cite instances of inmates being left behind without assistance during emergency evacuation drills that are periodically conducted.

**II.**     Discussion

    A.     Summary Judgment

"Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Audette v. Town of Plymouth, 858 F.3d 13, 19 (1st Cir. 2017) (quoting Mulloy v. Acushnet Co., 460 F.3d 141, 145 (1st Cir. 2006)). Although the summary judgment record is to be construed in a light most favorable to the non-moving party, the Court need not consider "conclusory allegations, improbable inferences, [or] unsupported speculation." Mulloy, 460 F.3d at 145 (quotation omitted).

"The ADA is a federal civil rights statute designed to provide comprehensive protection for disabled individuals against discrimination based on their disabilities." Theriault v. Flynn, 162 F.3d 46, 47–48 (1st Cir. 1998). The Rehabilitation Act, the precursor to the ADA, prohibits federal programs and recipients of federal financial assistance from discriminating on the basis of disability. See Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 19 (1st Cir. 2004). "[T]he case law construing the ADA generally pertains equally to claims under the Rehabilitation Act." Id.

To establish a violation of either Title II of the ADA or Section 504 of the Rehabilitation Act, a plaintiff must show that (1) he or she "is a qualified individual with a disability;" (2) he or she "was either excluded from participation in or denied the benefits of [a] public entity's services,

programs, or activities or was otherwise discriminated against;" and (3) that such denial was because of his or her disability. Gray v. Cummings, 917 F.3d 1, 15 (1st Cir. 2019); 42 U.S.C. § 12132.[2] The plaintiffs must show that they were denied "'meaningful access' to government benefits and programs" and that the defendants did not take "reasonable steps to ensure that individuals with disabilities can take advantage of" the DOC's benefits and programs. Theriault, 162 F.3d at 48. To obtain injunctive relief, plaintiffs must "establish a real and immediate threat" with "a sufficient likelihood that [the plaintiffs] will again be wronged in a similar way." Gray, 917 F.3d at 19.

The defendants contend that the summary judgment record here fails to show that as a matter of law the plaintiffs' claims that they either have been denied meaningful access to emergency notifications in the past or that there is a sufficient likelihood that they will be deprived of meaningful access in the future. The plaintiffs argue that the red dot procedures and the DOC's procedures during emergency situations and drills are insufficient, and accordingly do not amount to a reasonable accommodation under ADA standards.

After a careful review of the record, the Court concludes that the defendants are not entitled to summary judgment. There are disputed issues of material fact regarding the adequacy, utility, and implementation of the red dot procedures and other DOC policies and practices regarding the emergency evacuation of deaf and hard of hearing inmates. See Chisolm v. McManimon, 275 F.3d 315, 327 (3d Cir. 2001) ("Generally, the effectiveness of auxiliary aids and/or services is a question

---

[2] Plaintiffs and defendants agree that the Rehabilitation Act applies to entities that receive federal financial assistance. DOC does not dispute that it receives federal funds. Furthermore, "Title II of the ADA was expressly modeled after Section 504 of the Rehabilitation Act and is to be interpreted consistently with that provision." Theriault, 162 F.3d at 48 n.3. Additionally, the DOC for purposes of their motion for summary judgment agree that the plaintiffs are qualified individuals with disabilities entitled to "meaningful access."

of fact precluding summary judgment."). For example, there is an evaluative dispute between the parties about what constitutes "meaningful access" to emergency notifications.[3]

The defendants also argue that summary judgment should be granted on the plaintiffs' Eighth and Fourteenth Amendment claims because the record does not support a "deliberate indifference" on the part of DOC officials, which is crucial to satisfy an Eighth Amendment claim. "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). To succeed on such a claim, plaintiffs "must satisfy both a subjective and objective inquiry: [they] must show first, 'that prison officials possessed a sufficiently culpable state of mind, namely one of "deliberate indifference" to an inmate's health or safety,' and second, that the deprivation alleged was 'objectively, sufficiently serious.'" Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011) (quoting Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)).

As noted, the factual disputes between the parties do not simply concern specific provable facts, such as whether relevant historical events occurred as alleged or not, as is often the case on summary judgment motions, but rather they involve what could be termed evaluative facts: whether there was shown a *substantial risk* of the predicted harm, or whether the defendants were in their attitude toward the plaintiffs *deliberately indifferent* to the concerns raised by the plaintiffs. Judgments about such matters will depend not simply on the plaintiffs' proof of accurate historical facts, but on the factfinder's evaluation of the adequacy of the defendants' relevant policies and procedures. Accordingly, summary judgment on the Eighth and Fourteenth Amendment claims is also inappropriate.

---

[3] Since this genuine disagreement is itself sufficient to deny the motion, the Court at this stage need not address the defendants' other arguments in support of their motion.

B.     Motions to Strike

The plaintiffs have disclosed three experts: Gina G. Hilberry, an architect; Judy Anne Shepard-Kegl, a professor in the linguistics department at University of Maine who among other roles serves as the director of the University's Signed Language Research Laboratory; and Richard Lorenzo Ray, an ADA Technology Access Coordinator for the City of Los Angeles. The defendants move to exclude the following testimony: (1) opinion testimony by the proposed witnesses to the effect that DOC's policies and procedures for notifying deaf and hard-of-hearing inmates of emergencies are inadequate; and (2) Hilberry's proposed testimony concerning the meaning of certain safety-related regulations and standards and her opinions concerning DOC's financial estimates for installing in DOC facilities certain visual alarm systems proposed by the plaintiffs.

On the other hand, the plaintiffs move to strike paragraphs of the affidavit of Jeffrey Quick filed in support of the defendants' motion for summary judgment on the grounds that: (1) statements in the Quick affidavit fail to meet the requirements of Fed. R. Civ. P. 56(c)(4); (2) Quick lacks necessary personal knowledge required by Fed. R. Evid. 602; (3) statements in the affidavit are improper lay opinion testimony under Fed. R. Evid. 701; and/or (4) Statements in Quick's affidavit regarding the content of certain documents are not the best evidence, as required by Fed. R. Evid. 1002. The plaintiffs therefore request that the Court strike as inadmissible for purposes of summary judgment Paragraphs 5–9, 12, 17, 23–32, 35–36, 38–40, 42, and 43 of Mr. Quick's affidavit.

In light of the denial of the summary judgment motion, it is not necessary to rule on the evidentiary objections by either side. Those issues are preserved for trial. Accordingly, at this time both plaintiffs' and defendants' motions to strike are denied without prejudice.

**III.     Conclusion**

The defendants' motion for summary judgment (dkt. no. 224) is DENIED, and the defendants' motion to strike expert evidence (dkt. no. 227) and plaintiffs' motion to strike portions of affidavit of Jeffrey Quick (dkt. no. 247) are both DENIED without prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge