# Exhibit B



# Disability Law Center

http://www.dlc-ma.org • mail@dlc-ma.org

**Main Office**
11 Beacon Street, Suite 925
Boston, MA 02108
617-723-8455 | 800 872-9992 Voice
617-723-9125 Fax

**Western Massachusetts Office**
32 Industrial Drive East
Northampton, MA 01060
413-584-6337 | 800-222-5619 Voice

March 6, 2023

Edward O'Donnell, Esq.
Mary Murray, Esq.
Massachusetts Department of Correction
Legal Division
70 Franklin Street, Suite 600
Boston, Massachusetts 02110
edward.j.o'donnell@state.ma.us
mary.murray@state.ma.us

Re:   *Briggs et al. v. Massachusetts Dep't of Correction, et al.*, 15-cv-40162-GAO

Dear Ted and Mary:

Class Counsel writes, in keeping with Section XVI of the Settlement Agreement, to notify the Department of Correction (DOC) of Plaintiffs' belief that DOC is in substantial noncompliance with Sections IV.D, VIII.B.2, VIII.C of the Agreement as well as the provisions of DOC's 408 policy required by Sections XI.4 and XI.8[1] As described below, the substantial noncompliance is based on DOC's pattern and practice that violates its obligations under the Agreement to provide deaf and hard of hearing prisoners access to accommodations – namely, CapTel and pagers.

Class Counsel understand that DOC has recently chosen to revoke access to CapTel for a significant number of Class Members.[2] Class Members and the Monitor report that the revocation of CapTel access is happening following new Disability Accommodation Resources Assessments and without any meeting at all with DOC staff. According to the Monitor, "these accommodations denials seem to be totally based on the decibel hearing loss of the prisoner." Monitor's Fifth Report at pp. 141-142. Similarly, after years of delayed implementation, Class Members have been denied pagers based solely on threshold levels of hearing loss.

---

[1] Note that this letter does not provide an accounting of all compliance issues Plaintiffs have identified. Plaintiffs have previously raised compliance issues in prior letters to DOC dated October 30, 2020, August 25, 2021, and September 2, 2022.

[2] This understanding is based upon a high volume of reports from Class Members across a range of DOC facilities, information gained during the Monitor's December 2022 site visits, and the Fifth Report of the Settlement Monitor (January 26, 2023) ("Monitor's Fifth Report"). We understand that DOC has been conducting reassessments of Class Member needs for reasonable accommodations with the pager rollout, resulting "in many cases" of prisoners being denied pagers and having "previously granted accommodations such as CapTel services [] withdrawn, despite their continuing need and expressed preferences." Monitor's Fifth Report at pp.7, 20-22, 141-142.

The Protection and Advocacy System for Massachusetts



Section IV.D. of the Agreement discusses the assessment process to provide deaf and hard of hearing prisoners with hearing-related accommodations. In pertinent part, it states:

> The Institution ADA Coordinator shall review the deaf or hard-of-hearing inmate's selection and… shall determine which accommodations shall be approved and provided to the deaf or hard-of-hearing inmate. In making this decision, the Institution ADA Coordinator *shall give Primary Consideration to the preference expressed by the inmate* for particular auxiliary aids or services, unless one of the exceptions set forth in Section XI … applies. Any decision to deny an auxiliary aid or service selected by an inmate *must be based on an individualized assessment of the inmate, and not on any set guidelines, protocols, or threshold levels of hearing loss shown on an inmate's audiogram.*

Section IV.D (emphasis added). This language was included in the Agreement due to DOC's past use of threshold levels of hearing loss to deny accommodations like hearing aids.

For several years now, Class Counsel and the Monitor have been receiving reports of DOC failing to provide Class Members CapTel access in keeping with the requirements of the Agreement.[3] As discussed in previous letters alleging substantial noncompliance as well as in the Monitor's previous reports, Class Members have been repeatedly and regularly denied CapTel access within the time period prescribed by Section VIII.B.2,[4] primarily owing to: **(1)** an insufficient number of devices in many DOC facilities to meet the demand from individuals approved to access CapTel as an accommodation; and **(2)** facility-specific procedures concerning CapTel access and/or scheduling of CapTel appointments.

DOC informed Class Counsel that it planned to expand the number of CapTel and take other remedial action to cure these violations.  . We are therefore extremely concerned and disappointed that rather than focus on improving persistent deficiencies, DOC has chosen instead to revert to using threshold levels of hearing loss as a way of reducing the number of people entitled to accommodations.

---

[3] *See, e.g.,* Class Counsel's Letter to DOC Legal, September 2, 2022. In addition, the Monitor's report following the December 2022 site visits includes specific findings that CapTel wait times and protocols at MCI-Norfolk, MCI-Shirley, NCCI-Gardner, and MCI-Concord are noncompliant with the Agreement and recommendations to revise DOC's 482 Standard Operating Procedure to prohibit restrictions on CapTel access that violate the Agreement due to widespread complaints. *See* Monitor's Fifth Report at pp.7-9, 119-121, 123-125, 127, 130-132, 139-140,142-143.

[4] Section VIII.B.2 states, in pertinent part:

> The CapTel device shall be available during the same hours, including nights and weekends, that hearing inmates have access to traditional phones, consistent with 103 CMR 482…An approved inmate who requests access to a CapTel device shall be provided as soon as possible and without delay, with the expectation that access will be provided within forty-five (45) minutes, and occasions in which access is not provided within 2 hours shall be the rare exception. In no event shall an approved inmate have to wait longer than two-and-a-half (2.5) hours, unless access must be prevented or delayed as permitted by 103 CMR 482…DOC shall ensure that the location designated for CapTel use at each DOC Facility does not result in such frequent or repeated interruptions or interference to approved inmates' access and use that deaf and hard-of-hearing inmates are deprived of Effective Communication with persons outside of DOC Facilities that is substantially equal to the access to telecommunication services and devices that DOC provides to inmates without hearing disabilities.

By adopting threshold levels to deny access to both pagers and CapTel, DOC is in clear violation of the Agreement, DOC Policy, and the ADA. DOC's current approach: **(1)** fails to consider the individualized disability-related needs of each Class Member (Section IV.D); **(2)** fails to give Primary Consideration to Class Member preferences (104 DOC 408; Sections IV.D, XI.4[5]); and **(3)** relies on bases that are not permitted under federal law (103 DOC 408; Section XI.8[6]). DOC's reassessment and revocation of CapTel access can also be viewed as retaliation against Class Members for their complaints about untimely or otherwise unequal access to telecommunications.[7] Moreover, the language of the Agreement does not contemplate revocation of access to telecommunications accommodations for Class Members once approved.[8] Of course, denying qualified Class Members any access to CapTel on illegitimate bases also amounts to gross violation of Section VIII.B.2.

As the Federal Communications Commission (FCC) recognizes, "[i]t is not easy to determine in any given instance whether an individual with, e.g., moderate hearing loss needs to use a captioned telephone service to achieve functionally equivalent telephone communication."[9] Indeed, FCC rules only require users to provide a self-certification that they require the service for effective communication, 47 CFR § 64.611(j)(1)(v), and "do not require, e.g., a qualifying examination by a health or hearing professional."[10] DOC has not shown any permissible basis for deviating from this FCC practice or the dictates of the Agreement in denying Class Members equal and effective access to DOC's telecommunications services.

We look forward to receiving DOC's written response to this notification of alleged substantial noncompliance within thirty (30) days of today.

Sincerely,

Tatum A. Pritchard
Director of Litigation

---

[5] Section XI.4 states: "DOC shall give Primary Consideration … to deaf and hard-of-hearing inmates' requested accommodations when determining what types of auxiliary aids and/or services are necessary to ensure that they are able to communicate effectively and have effective, meaningful, and substantially equal access to DOC programs, services, and activities."

[6] Section XI.8 clarifies that "the exceptions to DOC's obligation to make its programs, services, and activities accessible…are limited to those which are permitted under federal law, as well as and limitations or requirements incorporated therein, including 28 C.F.R. §§ 35.130(h), 35.139(a)-(b), 35.150(a)(3)."

[7] *See, e.g.,* 28 C.F.R. § 35.134.

[8] Section VIII.C, on "Requesting Approval for and Access to Telecommunications Services and Devices," states:
> For TTY and/or CapTel devices, once approved, deaf or hard-of-hearing inmates need only to informally notify DOC staff that they wish to access the device in question, and DOC staff shall permit and facilitate timely access thereafter, in keeping with the provisions above.

[9] FCC, *In the Matter of Rates for Interstate Inmate Calling Services: Fourth Report and Order and Sixth Further Notice of Proposed Rulemaking,* FCC 22-76, p.22 at FN 144, (September 29, 2022) (labeled, "FCC Mandates TRS Access for Incarcerated People with Disabilities"), https://www.fcc.gov/ipcts.

[10] *Id.*