# Exhibit U



*The Commonwealth of Massachusetts*

*Executive Office of Public Safety and Security*

*Department of Correction*
*Bridgewater State Hospital*
*20 Administration Rd.*
*Bridgewater, MA 02324*

*(508) 279-4500*
*www.mass.gov/doc*



**Maura T. Healey**
*Governor*

**Kimberly Driscoll**
*Lieutenant Governor*

**Terrence M. Reidy**
*Secretary*

**Carol A. Mici**
*Commissioner*

**Shawn P. Jenkins**
*Chief of Staff*

**Kelly J. Correira**
**Robert P. Higgins**
**Mitzi S. Peterson**
**Thomas J. Preston**
*Deputy Commissioners*

**Stephen Kennedy**
*Superintendent*

April 5, 2023

**VIA EMAIL**

Tatum A. Pritchard, Esq.
Disability Law Center
11 Beacon Street, Suite 925
Boston, MA 02108

RE:     Briggs, *et al.,* v. Massachusetts Department of Correction, *et al.,* 15-cv-40162-GAO

Dear Ms. Pritchard:[1]

I am responding to your March 6, 2023 letter in which Class Counsel alleges that the Department of Correction (DOC) is in substantial non-compliance with Sections IV.D, VIII.B.2, VIIIC, XI.4, XI.8 of the Settlement Agreement and with the 103 DOC 408, <u>Reasonable Accommodations for Inmates</u>, policy.  In particular, Class Counsel alleges substantial non-compliance based upon DOC's practices with respect to the provision of access to CapTel devices and pagers.   For the reasons stated below, DOC denies that it is not in compliance with the provisions of the Settlement Agreement.

**Assessment of Disability and Accommodations**

The DOC has reviewed approval for CapTel access and pager usage across facilities.  With respect to CapTel devices, unlike calls placed by inmates on conventional inmate telephones,

---

[1] Please note the correct addresses for DOC's counsels: Mary Murray, Supervising Counsel, Massachusetts Treatment Center, 30 Administration Road, Bridgewater, MA  02324, and Edward O'Donnell, Deputy Supervising Counsel, Bridgewater State Hospital, 20 Administration Road, Bridgewater, MA 02324.

CapTel calls are provided free of charge to the inmates and each call has a limit that is double that for calls placed on conventional inmate telephones.  These circumstances create obvious incentives for inmates to claim a need to use CapTel devices when such a need does not truly exist.  Because the CapTel calls are taxpayer funded and to ensure timely access to CapTels for the inmates who truly need them, DOC has a responsibility to ensure that authorization to use such devices is appropriately determined.  Thus, DOC cannot rely exclusively upon an inmate's self-reported need to use the CapTel devices.  Indeed, as you noted, the Federal Communications Commission (FCC) recognizes, "[i]t is not easy to determine in any given instance whether an individual with, e.g., moderate hearing loss needs to use a captioned telephone service to achieve functionally equivalent telephone communication."

Therefore, the clinically assessed hearing level of an individual is a significant factor, but not the only factor, in determining the need for the device.  Guidelines have been developed by Wellpath, the DOC's contracted medical provider, addressing the varying degrees of hearing capabilities ranging from normal hearing to profound deafness as associated with the likely need for an assistive device to be provided.  See Item 19 in the Sixth Production.  These guidelines set forth a general approach to be taken and recognize that if an inmate appears to fall outside of the guidelines, a more in-depth evaluation, including a discussion with DOC staff who are familiar with the individual, should be undertaken to assess the needs presented.  To that end, DOC has been conducting a reassessment of the individuals who had been authorized to use a CapTel device and who had been issued pagers.  The Settlement Agreement, Section VIII.C., provides that the approval of an inmate to access certain telecommunication services or devices is subject to periodic review for appropriateness.  The Settlement Agreement thus expressly permits reassessment.

Contrary to Class Counsel's assertion, the Disability Accommodations Resource Assessments (DARA) are being completed by a staff person who is directly interacting with the inmate.  Please see Eighth Production, Item 15.  The DARA forms are completed following an individualized assessment and take into account a number of factors in addition to the clinical determination of the extent of hearing loss.  The Eighth Production, Item 15, provides examples of the DARA forms being used.  As these documents show, the inmate is asked a series of questions including to describe the extent, if any, of their hearing loss; whether they can read and write, and if so, in which language; whether they currently have hearing aids; which other assistive devices, if any, they are presently using; whether they can communicate adequately while using hearing aids; whether they can communicate on the telephone with hearing aids and an amplifier/pocket talker; whether they can understand announcements made verbally or on the public address system; and which aids they are requesting.

Inmates who believe that they have a need for additional accommodations have been informed that they may submit an appeal to the DOC's ADA Coordinator.  Appeals are, or will be, reviewed and, where appropriate, inmates are, or will be, referred to Wellpath for additional assessment.

2

Further, the Eighth Production data indicates there have been a number of inmates with lesser degrees of hearing loss who have been using the CapTel phones.[2]

**Timing of CapTel Access**

DOC continues to work on documenting the time an inmate requests to use a CapTel device linked to the time access is provided.  Once again, we urge Class Counsel to recommend to  class members that they submit grievances so that, if there is an issue with providing timely access to a CapTel device, the issue can be addressed in a timely manner.  Alternatively, we urge Class Counsel to bring specific instances to our attention.  It is simply impossible to address generalized allegations without reference to the inmate, the time, and the date of the alleged occurrence.

As may be seen in the Eighth Production in items 31-34, there are multiple inmates using the CapTel devices in accordance with the Settlement Agreement.  As indicated in the periodic productions, DOC has increased the number of CapTels where the needs have been identified. For example, in the First and Second Productions, Item 33 indicated that MCI Concord had three Captels, Massachusetts Treatment Center had two, MCI Norfolk had one, North Central Correctional Institution had four, Northeastern Correctional Center had one, Old Colony Correctional Center had two, MCI Shirley had two, and Souza Baranowski Correctional Center had one.  In the Eighth Production, the data show that MCI Concord has seven[3] CapTels, Massachusetts Treatment Center has thirteen, MCI Norfolk has ten, North Central Correctional Center has seven, Northeastern Correctional Center has two, Old Colony Correctional Center has three, MCI Shirley has seven, and Souza Baranowski Correctional Center has eleven. Additionally, DOC has ordered 45 additional CapTel devices for placement within the various facilities.  Where needed, wiring is underway to allow for usage of the additional devices.

The DOC takes a systematic approach to identify inmates who are DHH as they arrive in the DOC's custody and thereafter as needed.[4]  The needs of these individuals are assessed and responded to.  Databases are maintained to monitor and track the individuals identified as DHH. See Item 03 and Item 04 in the Eighth Production.  American Sign Language interpreters are

---

[2] Through the DARA reassessment process, each individual's needs are currently being determined and so some individuals previously authorized to use a CapTel may be determined to no longer be eligible for such use.
[3] Three were noted to be in need of repair.
[4] The DOC practices are in keeping with Section .11 of the 103 DOC 408, Reasonable Accommodations for Inmates policy, which states:

    1.   When an inmate has been identified as Deaf or Hard-of-Hearing or Blind or visually impaired at any time during their incarceration, including at intake or by the Department's contracted medical provider, the Institution ADA Coordinator shall conduct a Disability Accommodation Resources Assessment that assesses the inmate's hearing related or sight related needs so that he/she/they may effectively communicate and receive effective, meaningful, and substantially equal access to Department programs, services, and activities during their incarceration.

    2.   Auxiliary Aids and Services shall be provided, when medically necessary or approved through the Disability Accommodation Resources Assessment or the Reasonable Accommodation process, as determined by the Department, to assist an inmate who is disabled to ensure access with a Reasonable Accommodation to existing programs, services, activities and/or benefits within the Department.

provided as needed.  See Items 22, 24 in the Eighth Production. DOC staff receive training in the requirements of the Americans with Disabilities Act.  See Item 36 in the Eighth Production. DOC audits its facilities to ensure that, at intake, inmates are asked about hearing loss and the need for accommodations and are provided with information about their rights and available telecommunication devices.   See Item 38 in the Eighth Production.

As you noted, 47 CFR § 64.611(j)(1)(v), requires users to provide a self-certification that they require the captioned telephone service for effective communication, and do not require, e.g., a qualifying examination by a health or hearing professional.  However, 47 CFR § 64.611(j)(1)(ix) requires that an independent third-party professional be qualified to evaluate an individual's hearing loss in accordance with applicable professional standards and that the person, who must be either a physician or audiologist or other hearing-related professional, certify in writing under the penalty of perjury that the user is an individual with hearing loss that necessitates use of a captioned telephone service.  Further, 47 CFR § 64.611(j)(1)(xi) states that in instances where the consumer has obtained IP CTS equipment from a local, state, or federal governmental program, the consumer may present documentation to the IP CTS provider demonstrating that the equipment was obtained through one of these programs in lieu of providing an independent third-party certification.  Presumably this allowance is because any such governmental program would have established an eligibility requirement pursuant to which a determination was made that the particular individual met the requirement.

As provided within the Settlement Agreement's definition of Primary Consideration,[5] with respect to individuals who are not authorized to use CapTels and pagers, DOC provides another effective means of communicating.  Inmates may be issued pocket talkers and hearing aids and the conventional inmate telephones have amplification capabilities to allow for users to hear the other caller's communications.

Sincerely,


Edward J. O'Donnell
Deputy Supervising Counsel


cc:   James Pingeon, Esq.
      Lisa Pirozzolo, Esq.
      ─────────────────────


[5] **"Primary Consideration"** means that DOC must honor a deaf or hard-of-hearing inmate's expressed choice(s) of accommodations when determining what types of auxiliary aids and/or services are necessary to ensure that the inmate is able to communicate effectively and have effective, meaningful, and substantially equal access to DOC programs, services, and activities, unless DOC can demonstrate (1) that another means of Effective Communication is available or (2) that the means chosen by the inmate would result in a fundamental alteration in the service, program, or activity, in undue financial and administrative burdens, or will result in actual risks or impairment of the safe operation of a DOC Facility or the service, program, or activity in accordance with 28 C.F.R. § 35.130(h).

ADDENDUM

Settlement Agreement Section IV.D:

D.      Initial Assessment to Determine Appropriate Hearing-Related Auxiliary Aids
        and Services

For every inmate who has been identified as deaf or hard-of-hearing, DOC's Department
ADA Coordinator for Inmates or an Institution ADA Coordinator shall coordinate an assessment
of the inmate's hearing-related needs so that the inmate may effectively communicate and receive
effective, meaningful, and substantially equal access to DOC programs, services and activities
during his or her incarceration. The Department ADA Coordinator for Inmates or Institution ADA
Coordinator shall initiate the assessment no later than five (5) days after an inmate has been
identified as deaf or hard-of-hearing and shall complete the assessment within thirty (30) days
thereafter, unless additional input about the nature of an inmate's hearing needs has been sought
but cannot be obtained within the 30 days. In situations where an assessment has not been
completed within 30 days, DOC must ensure that it completes the assessment as soon as is
feasible after the 30-day period has expired.

No more than five (5) days after an inmate has been identified as deaf or hard-of-hearing,
the Institution ADA Coordinator shall meet with that inmate for the purposes of, among other
things, (1) addressing the specific hearing-related accommodations available at DOC, in
accordance with the terms of this Agreement, and (2) assessing the inmate's need for such
hearing-related accommodations. If the inmate is deaf or hard-of-hearing and his or her primary
language is ASL, a Qualified Sign Language Interpreter shall be present at this meeting. If the
deaf or hard-of-hearing inmate requires an alternative auxiliary aid or service to effectively
participate in the meeting, it shall be provided.

At this meeting, the Institution ADA Coordinator and the deaf or hard-of-hearing inmate
shall discuss, with the assistance of the Qualified Sign Language interpreter or other auxiliary aid
where necessary, the inmate's areas of hearing-related need (*e.g.*, making phone calls, receiving
instructions, participating in programming, etc.) and the inmate's preferred method of
communication and of receiving information (*e.g.*, lip-reading, written language, ASL, etc.). The
Institution ADA Coordinator shall provide the deaf or hard-of-hearing inmate with a list of
hearing-related Auxiliary Aids and Services that have been approved for use in DOC Facilities in
appropriate circumstances (*e.g.*, interpreter services, CART, physical devices that have passed a
security review). Where necessary, including when the deaf or hard-of-hearing inmate is
unfamiliar with any of the listed auxiliary aids or services, the Institution ADA Coordinator shall
explain the Auxiliary Aids and Services available to the deaf or hard-of-hearing inmate, including
what hearing-related need area they may help address and how. The Institution ADA Coordinator
and the deaf or hard-of-hearing inmate may also discuss any other topics that are relevant to the
inmate's hearing-related needs, including whether the inmate has previously used other auxiliary
aids or services not included on the provided list of available accommodations to enable him or
her to effectively communicate or receive information. The Institution ADA Coordinator shall
document the substance discussed at this meeting, including the inmate's preferred form of
communication; the documentation will be stored in the inmate's ADA folder.

Based on the information provided, the deaf or hard-of-hearing inmate shall indicate at the meeting which auxiliary aids or services he or she believes are necessary to enable him or her to effectively communicate and participate in any DOC programs, services, and activities for which he or she is eligible. The Institution ADA Coordinator shall document which Auxiliary Aids and Services the inmate has selected; the documentation will be stored in the inmate's ADA folder. The inmate shall not be required to complete the Request for Reasonable Accommodation form.

The Institution ADA Coordinator shall review the deaf or hard-of-hearing inmate's selection and, within no more than thirty (30) days and in accordance with Section XI (Revisions to Relevant DOC Policies in Accordance with this Agreement), ¶ 8, shall determine which accommodations shall be approved and provided to the deaf or hard-of-hearing inmate. In making this decision, the Institution ADA Coordinator shall give Primary Consideration to the preference expressed by the inmate for particular auxiliary aids or services, unless one of the exceptions set forth in Section XI (Revisions to Relevant DOC Policies in Accordance with this Agreement), ¶ 8, applies. Any decision to deny an auxiliary aid or service selected by an inmate must be based on an individualized assessment of the inmate, and not on any set guidelines, protocols, or threshold levels of hearing loss shown on an inmate's audiogram. Notwithstanding the foregoing, in accordance with Section XI (Revisions to Relevant DOC Policies in Accordance with this Agreement), ¶ 2, for deaf or hard-of-hearing inmates whose primary language is ASL, the Institution ADA Coordinator shall approve and provide as soon as is feasible auxiliary aids in the form of Qualified Sign Language Interpreter services, the telecommunication services of the inmate's choosing, and the visual and/or tactile notification device (*e.g.*, facility-approved receiver/pager and vibrating watch) of the inmate's choosing. The Institution ADA Coordinator shall document the approved auxiliary aids or services in the inmate's ADA folder and in IMS. If the Institution ADA Coordinator denies or modifies any requested auxiliary aid or services, he or she shall document the reasons for such denial or modification in the inmate's ADA folder. A deaf or hard-of-hearing inmate shall have the opportunity to appeal any such denial or modification to the Department ADA Coordinator for Inmates. Depending on the needs of the deaf or hard-of-hearing inmate, auxiliary aids and/or services will be made available to allow the inmate effective access to the appellate process. The Institution ADA Coordinator shall notify the Department ADA Coordinator for Inmates of (1) the inmate's requested accommodations, (2) whether such requested accommodations were granted, denied, or modified, and (3) where a requested accommodation was denied or modified, the reasons therefor. The Department ADA Coordinator for Inmates shall document this information in the centralized database that he or she maintains.

In accordance with Section X(B) (Supplemental Training Provided to Institution ADA Coordinators), DOC shall coordinate with MCDHH or other community resources to provide Institution ADA Coordinators with supplemental training regarding the Auxiliary Aids and Services available to deaf and hard-of-hearing inmates. Additionally, DOC shall coordinate with MCDHH or other community resources to prepare approved language that Institution ADA Coordinators should use to explain the Auxiliary Aids and Services available to deaf and hard-of-hearing inmates.

Institution ADA Coordinators who have not yet received the supplemental training may initiate the initial assessment within five (5) days after an inmate has been identified as deaf or

hard-of-hearing if they use this approved language. However, they may not either complete the initial assessment or issue any decision denying the preferred auxiliary aids or services sought by a deaf or hard-of-hearing inmate unless they (1) receive input from MCDHH or a qualified specialist recommended by MCDHH or (2) consult with an Institution ADA Coordinator from another DOC Facility who has already received the supplemental training or the Department ADA Coordinator for Inmates.

The Institution ADA Coordinator who has received the supplemental training may solicit input and/or assistance from MCDHH, a qualified specialist recommended by MCDHH, DOC's Contract Medical Provider, or other community resources where he or she determines that such input or assistance would be helpful for determining which auxiliary aids or services would be appropriate for a particular deaf or hard-of-hearing inmate. If the Institution ADA Coordinator determines that input and/or assistance from MCDHH, a qualified specialist recommended by MCDHH, DOC's Contract Medical Provider, or other community resources would be beneficial, the Institution ADA Coordinator shall solicit such input and/or assistance as soon as practicable. Factors that the Institution ADA Coordinator may consider in deciding whether such input and/or assistance would be beneficial include, but are not limited to: (1) whether the deaf or hard-of-hearing inmate is able to identify auxiliary aids and/or services that he or she believes are necessary in order to enable him or her to effectively communicate or to participate in proffered DOC programs, services, activities; (2) whether the Institution ADA Coordinator believes the inmate's expressed preference for a particular accommodation or service should be denied; and (3) whether the deaf or hard-of-hearing inmate requests a hearing-related medical device that must be prescribed or provided by DOC's Contract Medical Provider. The Institution ADA Coordinator shall also request input or assistance from MCDHH, or a qualified specialist recommended by MCDHH, for profoundly or severely hearing-impaired inmates, unless the inmate declines such input or assistance in writing. When an Institution ADA Coordinator requests and receives such input or assistance from MCDHH, documentation of the request(s) and response(s) from MCDHH, including any accommodations recommended by MCDHH, shall be included in the inmate's ADA folder.

Additionally, DOC officials shall request to meet with MCDHH, or a qualified specialist recommended by MCDHH, twice a year to consult with DOC concerning the accommodations provided by DOC to deaf and hard-of-hearing inmates and best practices in the correctional context. MCDHH may request, and DOC shall provide, with the inmate's written consent, access to documents showing the hearing-related accommodations provided to particular deaf or hard-of-hearing inmates to or at such meetings.

Any deaf or hard-of-hearing inmate who wishes to request accommodations prior to meeting with the Institution ADA Coordinator or request accommodations not documented in the inmate's ADA folder, the centralized database maintained by the Department ADA Coordinator for Inmates, or in IMS may do so at any time in accordance with the Reasonable Accommodation Process. DOC shall provide such assistance as is necessary to aid a deaf or hard-of-hearing inmate in completing a request for reasonable accommodation.

Additionally, if an inmate arrives in DOC custody with a hearing-related medical device or hearing-related auxiliary aid, he or she shall be permitted to retain such assistive device pending intake assessment by Contract Medical Provider staff, absent security concerns.

Settlement Agreement Section VIII B.2:

2.      Captioned Telephones

DOC will make at least one CapTel device available at each DOC Facility. DOC will provide additional CapTel devices in DOC Facilities when possible based on the location of analog telephone lines and availability of a suitable space for use thereof, as determined by DOC taking into consideration such factors as use of the space by correctional staff, operational needs, security concerns, technical needs and concerns, and the safe use and storage of the device. The portable CapTel device will be stored in a designated location at each facility, to be determined by each facility. The CapTel device shall be available during the same hours, including nights and weekends, that hearing inmates have access to traditional phones, consistent with 103 CMR 482. Deaf and hard-of-hearing inmates who have been approved to use the CapTel device must request access to the CapTel device each time they wish to use it. An approved inmate who requests access to a CapTel device shall be provided as soon as possible and without delay, with the expectation that access will be provided within forty-five (45) minutes, and occasions in which access is not provided within 2 hours shall be the rare exception. In no event shall an approved inmate have to wait longer than two-and-a-half (2.5) hours, unless access must be prevented or delayed as permitted by 103 CMR 482. If an inmate's access to a CapTel device is prevented or delayed, DOC must notify the requesting inmate and provide access as soon as is feasible. The requirements of 103 DOC 482.07(1) shall apply to access to CapTel devices. DOC will ensure that there are staff members on each shift at each DOC Facility who know where the CapTel device(s) is stored and the process by which deaf and hard-of-hearing inmates approved to use the device may access it. DOC shall ensure that the location designated for CapTel use at each DOC Facility does not result in such frequent or repeated interruptions or interference to approved inmates' access and use that deaf and hard-of-hearing inmates are deprived of Effective Communication with persons outside of DOC Facilities that is substantially equal to the access to telecommunication services and devices that DOC provides to inmates without hearing disabilities.

Settlement Agreement Section VIII.C:

C.      Requesting Approval for and Access to Telecommunication Services and Devices

DOC will provide access to videophone, TTY, and/or CapTel services and devices to those deaf or hard-of-hearing inmates who have requested access thereto and whose requests have been approved, or to deaf or hard-of-hearing inmates who have been otherwise approved, in accordance with the procedures set forth in the 408 Policy. Deaf and hard-of-hearing inmates may be approved for and receive regular access to more than one of the above telecommunication service(s) or device(s). DOC shall maintain a record of a deaf or hard-of-hearing inmate's approval to access certain telecommunication service(s) or device(s) in IMS as an open-ended medical restriction, subject to periodic reviews for appropriateness. In the event of a transfer, approvals for

telecommunication service(s) and device(s) shall follow deaf and hard-of-hearing inmates from facility to facility.

Deaf and hard-of-hearing inmates who have been approved to access videophone, TTY, and/or CapTel services and devices shall not be required to submit a new Request for Reasonable Accommodation each time they wish to access the approved telecommunication service(s) and device(s). Once approved, deaf and hard-of-hearing inmates shall only require permission to use videophones on a particular occasion in the same limited circumstances in which other inmates require permission to use traditional telephones. For TTY and/or CapTel devices, once approved, deaf or hard-of-hearing inmates need only to informally notify DOC staff that they wish to access the device in question, and DOC staff shall permit and facilitate timely access thereafter, in keeping with the provisions above.

Inmates who have been identified as deaf or hard-of-hearing, either through self-identification or identification by DOC or its Contract Medical Provider, shall be notified during booking and admission and at inmate orientation of all telecommunication services and devices available at DOC Facilities, so that they are aware of what technologies exist and may submit a Request for Reasonable Accommodation for approval to access the appropriate service(s) or device(s). A written description of all available telecommunication services and devices shall also be included in each facility's Inmate Orientation Manual. If an inmate is later identified as deaf or hard-of-hearing while in DOC custody, either through self-identification or identification by DOC or its Contract Medical Provider, the Institutional ADA Coordinator or designee at the facility in which such inmate is housed shall notify the inmate of the telecommunication services and devices available so that the inmate may submit a Request for Reasonable Accommodation for approval to access the appropriate services and devices.

Settlement Agreement Section XI.4:

4.      Relevant provisions of the 408 Policy, and other DOC policies as necessary, shall clarify that, among other factors, including those listed in 28 C.F.R. § 35.160(b)(2), DOC shall give Primary Consideration, as that term is defined in Section III (Definitions), ¶ 27, to deaf and hard-of-hearing inmates' requested accommodations when determining what types of auxiliary aids and/or services are necessary to ensure that they are able to communicate effectively and have effective, meaningful, and substantially equal access to DOC programs, services, and activities.

In the Settlement Agreement, "Primary Consideration" means that DOC must honor a deaf or hard of hearing inmate's expressed choice(s) of accommodations when determining what types of auxiliary aids and/or services are necessary to ensure that the inmate is able to communicate effectively and have effective, meaningful, and substantially equal access to DOC programs, services, and activities, unless DOC can demonstrate (1) that another means of effective communication is available or (2) that the means chosen by the inmate would result in a fundamental alteration in the service, program, or activity, or in undue financial and administrative burdens.

Settlement Agreement Section XI.8:

8.      Relevant provisions of the 408 Policy (which includes those sections numbered 103 DOC 408.01, 408.07, and 408.11), and other DOC policies as necessary, shall clarify that the exceptions to DOC's obligation to make its programs, services, and activities accessible to disabled inmates (including deaf and hard-of-hearing inmates) are limited to those which are permitted under federal law, as well as any limitations or requirements incorporated therein, including 28 C.F.R. §§ 35.130(h), 35.139(a)-(b), 35.150(a)(3). These exceptions include that DOC need not provide accommodations in the following circumstances:

(a)      If the accommodation will result in a fundamental alteration in the nature of a program, activity, or service or in undue financial or administrative burdens. The decision that an accommodation would result in a fundamental alteration or in undue financial or administrative burdens must be made by the Commissioner or his or her designee after considering all resources currently available for use in the funding and operation of DOC's programs and services, and must be accompanied by a written statement of reasons documenting that conclusion, in accordance with 28 C.F.R. §§ 35.150(a)(3) and 35.164;

(b)      If the accommodation will result in actual risks or impairment of the safe operation of a DOC program, activity, or service, in accordance with 28 C.F.R. § 35.130(h); or

(c)      If the inmate seeking to participate in or benefit from the DOC program, activity, or service, poses a Direct Threat to the health or safety of the inmate or others. To determine whether an inmate poses a Direct Threat, DOC must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk, in accordance with 28 CFR § 35.139(b).